IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL ACTION |
| | : | NO. 11-672-01 |
| v. | : | |
| | : | CIVIL ACTION |
| ADRIANO SOTOMAYOR | : | NO. 15-777 |


                         M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              November 23, 2015


        Petitioner Adriano Sotomayor is a federal prisoner incarcerated in Ashland, Kentucky. He filed a pro se petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, claiming that he received ineffective assistance at the plea bargaining stage. For the reasons that follow, the Court will deny the petition.

I.      BACKGROUND

        On October 25, 2012, Petitioner was charged by superseding indictment with seventeen counts of wire fraud, in violation of 18 U.S.C. §§ 2 and 1343. ECF No. 44. The charges arose out of a scheme in which Petitioner scammed Roman Catholic religious persons and clergy in Puerto Rico into paying "advance

fees" in connection with wills in which they were – according to Petitioner – named as beneficiaries. Id. ¶ 9. The religious persons and clergy also sought financial assistance from friends, family, and parishioners to pay the fees that Petitioner said were required. Id. Of course, the wills were fictitious and the fees for no purpose other than Petitioner's own profit. In this way, Petitioner took roughly $1.3 million from more than fifty victims. Id. ¶ 21.

On February 22, 2013, six days before trial was scheduled to begin, Petitioner entered an open plea of guilty to all charges. Plea Hr'g Tr. 25:24-26:5, ECF No. 133. Four months later, the Court sentenced him to 216 months (eighteen years) of imprisonment. Sentencing Hr'g Tr. 242:22-243:3, ECF No. 118.

Petitioner appealed, and the Third Circuit affirmed. United States v. Sotomayor, 563 F. App'x 123, 128 (3d Cir. 2014). Thereafter, on February 18, 2015, Petitioner filed the instant petition for relief pursuant to 28 U.S.C. § 2255 ("§ 2255 Petition"), alleging ineffective assistance of counsel due to a language barrier. ECF No. 130. The Government filed a response, ECF No. 135, and Petitioner replied, ECF No. 139. The § 2255 Petition is now ripe for disposition.

**II.   LEGAL STANDARD**

A federal prisoner "claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Such a prisoner may attack his sentence on any of the following grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law. Id. An evidentiary hearing on the merits of a prisoner's claims is necessary unless it is clear from the record, viewed in the light most favorable to the petitioner, that he is not entitled to relief. Id. § 2255(b). The court is to construe a prisoner's pro se pleading liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), but "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation," United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

A § 2255 petition may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 697 (1984). By claiming his counsel was ineffective, a defendant attacks "the fundamental fairness of the proceeding." Id. at 697. Therefore, as "fundamental fairness is the central concern of the writ of

3

habeas corpus," "[t]he principles governing ineffectiveness should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." Id. Those principles require a convicted defendant to establish both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).

To prove deficient performance, a petitioner must show that his "counsel's representation of him fell below an objective standard of reasonableness." Id. The court's "scrutiny of counsel's performance must be highly deferential." Douglas v. Cathel, 456 F.3d 403, 420 (3d Cir. 2006). Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 689). In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Strickland, 466 U.S. at 690. Next, the court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The

defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### III. DISCUSSION

The § 2255 Petition contains two claims: (1) counsel's inability to communicate with Petitioner – a native Spanish speaker – prevented him from providing effective assistance; and (2) counsel provided ineffective assistance through the advice he offered during the plea process.

First, Petitioner argues that his limited understanding of English "prevented effective communication from being established between [counsel] and [Petitioner]." § 2255 Pet. at 6. According to Petitioner, a translator was rarely present when he met with his lawyer, Mark Greenberg, so Petitioner did not always understand what Greenberg was saying. Id. Eventually, Petitioner says, he "came to the view that the barriers to communication would make it impossible to prepare any sort of defense, and [he] made a decision that the only realistic course for [him] was to plead guilty for favorable sentencing consideration." Id. at 6A. The language barrier also

5

prevented him from fully understanding portions of Greenberg's advice. Id.

The Government argues that this claim should be denied because Petitioner has not demonstrated that he was unable to communicate in or understand English. Specifically, the Government notes that: (1) Petitioner told the Court at one point that he has "about 30 percent" ability to read and write in English; (2) Petitioner spoke with FBI agents in English; (3) Greenberg previously told the Court that he believed that Petitioner understood him and that they were able to communicate effectively; (4) Petitioner sent Greenberg letters written in English; and (5) Petitioner sent the Court a handwritten letter written in excellent English. Moreover, the Government says, the record reflects the fact that Greenberg did hire an interpreter to translate for Petitioner during a number of their meetings. Gov't's Resp. at 11-12, ECF No. 135.

More fundamentally, however, this first "claim" is not actually a cognizable claim on its own. Petitioner's assertion is that the language barrier prevented Greenberg from offering effective assistance. But the facts he presents in support of this claim – that is, how Greenberg was allegedly ineffective – are the same as those he presents in support of his second

claim:[1] that Petitioner could not truly understand Greenberg, so he accepted Greenberg's advice to reject the Government's plea offer in favor of pleading open. In other words, this first claim is that Petitioner and counsel could not effectively communicate, but without more – namely, allegations concerning the effect that this barrier had on Petitioner's case – it is not a claim of ineffective assistance. And here, those necessary allegations are, in fact, exactly what Petitioner's second claim presents. Accordingly, Petitioner's claims are best construed together.

The claim before the Court is thus that Greenberg provided ineffective assistance by recommending mere weeks before trial was scheduled to begin that Petitioner reject the Government's proposed plea deal. Specifically, Petitioner alleges that when he and Greenberg met with the Government in February 2013, shortly before trial, Greenberg "took [him] aside and recommended against accepting the agreement." § 2255 Pet. at 6A. Petitioner claims that in the absence of this advice – which he took because he did not fully understand what Greenberg was saying – Petitioner would have accepted the Government's plea offer of 110 to 137 months of imprisonment. Id. Instead, he pled

---

[1] In fact, in the "supporting facts" section of Ground Two in the § 2255 Petition, Petitioner simply says, "See supporting facts related to Ground One." § 2255 Pet. at 7.

7

open and received a sentence of 216 months. This claim is unavailing.

First, the evidence demonstrates that there was not in fact a plea offer on the table when Petitioner chose to plead open. Although Petitioner claims that "the Guilty Plea Agreement . . . was still an open offer" when he and Greenberg met with the Government in February 2013, shortly before trial, Def.'s Reply at 3, ECF No. 139, the uncontroverted evidence shows that he had in fact rejected the offer in October 2012, four months before that meeting.[2] Email from Mark S. Greenberg to Karen Klotz, Oct. 9, 2012, Gov't's Resp., Ex. G. Moreover, the Government's extemporaneous memorandum of interview following the February meeting notes that Petitioner was fully advised – with the assistance of a translator – that no plea offer was on the table and that he had rejected the previous offer. FBI 302 dated Feb. 8, 2013, Gov't's Resp., Ex. A. In other words, Greenberg's advice on February 5, 2013, necessarily concerned whether to plead open or proceed to trial, not whether to accept the Government's offer or plead open.

Even assuming, however, that either the plea offer was somehow still on the table during the February meeting or that

---

[2] According to Greenberg, Petitioner wanted a sentence of 84 months and did not want to plead open. Email from Mark S. Greenberg to Karen Klotz, Oct. 18, 2012, Gov't's Resp., Ex. G.

Greenberg's advice to reject it actually occurred in October 2012, when the offer was presented, this advice still "falls within the wide range of reasonable professional assistance."[3] Grant, 709 F.3d at 234 (quoting Strickland, 466 U.S. at 689). According to Petitioner, Greenberg recommended that Petitioner reject the plea offer and plead open so that Greenberg could object at sentencing to the Government's requested sentencing enhancements. § 2255 Pet. at 3. Petitioner has not overcome the strong presumption that this advice was a reasonable strategic decision. See Strickland, 466 U.S. at 689. "If the Government 'can show that counsel actually pursued an informed strategy (one decided upon after a thorough investigation of the relevant law and facts),' the effectiveness of counsel's assistance is 'virtually unchallengeable.'" United States v. Graves, 613 F. App'x 157, 159 (3d Cir. 2015) (quoting Thomas v. Varner, 428 F.3d 491, 500 (3d Cir. 2005)). The Government has done so here. The Government's proposed plea agreement would have required Petitioner to stipulate to a number of enhancements, see Gov't's Resp., Ex. F, some of which Greenberg did successfully argue against at the sentencing hearing, see Gov't's Resp. at 6-7.

---

[3]   For this reason, the Court need not determine the scope of Petitioner's abilities in English – if Greenberg's performance was not deficient, regardless of the effectiveness of his communication with his client, then Petitioner has failed to make out a claim of ineffective assistance.

9

Unfortunately for Petitioner, Greenberg did not also dissuade the Court from imposing an upward variance.[4] But the fact that Greenberg's alleged strategy did not work out exactly the way Petitioner would have hoped does not invalidate the decision as a reasonable strategic choice.

Accordingly, Petitioner has failed to show that counsel's performance was deficient,[5] and thus his claim of ineffective assistance is unavailing.

### IV.   CERTIFICATE OF APPEALABILITY

When a court issues a final order denying a § 2255 motion, it must also decide whether to issue a certificate of appealability. Such a certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason

---

[4]   After the Court ruled on objections to requested enhancements, Petitioner's sentencing range was 121 to 151 months. Sentencing Hr'g Tr. 199:6-8, ECF No. 118. The Court then imposed an upward variance to reach the final sentence of 216 months. Id. 241:22-242:1.

[5]   Notably, at the end of his case, Petitioner agreed with this conclusion. At his sentencing hearing, he told the Court, "I would like to thank my lawyer, and I apologize for the misunderstandings that we've had. He's the best of the best." Sentencing Hr'g Tr. 237:3-5. Previously, at his change of plea hearing, Petitioner had also told the Court, "I want to thank you at the bottom of my heart for appointing [Greenberg] as my lawyer," and indicated that he was "satisfied with Mr. Greenberg's representation fully and completely." Plea Hr'g Tr. 6:17-7:8.

could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Pabon v. Mahanoy, 654 F.3d 385, 393 (3d Cir. 2011) (quoting Miller-El v. Cockrell, 537 U.S. 322, 327 (2003)). Here, Petitioner has not made such a showing. The Court therefore declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed above, the Court will deny the § 2255 Petition without an evidentiary hearing or a certificate of appeability.